Francis J. Maloney III, OSB #953441
E-mail: fjm@mlrlegalteam.com
Scott A. MacLaren, OSB #123799
E-mail: sam@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, OR  97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

Attorneys for Defendant
Sentinel Insurance Company, Ltd.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LIONESS HOLDINGS, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>SENTINEL INSURANCE COMPANY, LTD., a Connecticut Insurance Company,<br><br>    Defendant. | Civil No. 3:17-cv-01238-JE<br><br>DEFENDANT'S TRIAL MEMORANDUM |

Sentinel Insurance Company, Ltd., (Sentinel) submits this trial memorandum and summary of the case issues.

**A. Introduction**

This case involves a series of thefts to ten "Tan Republic" tanning franchise salons in the Portland Metro area, which were committed by Plaintiff's former corporate trainer and contractor, Ryan Reeves, using a


1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 1

"signature" *modus operandi* for all of the ten thefts. Plaintiff submitted an insurance claim to Sentinel, who began investigating the unusual loss. As part of its investigation, Sentinel requested certain records and information that Plaintiff refused to produce. After months of Sentinel's unsuccessful attempts to gather the necessary information to make a claim decision, Plaintiff prematurely filed this lawsuit without ever having produced material claim documents.

**B. Allegations**

Plaintiff originally asserted two separate claims for Breach of Contract and Breach of the Implied Duty of Food Faith and Fair Dealing. Plaintiff also asserted damages to property and equipment in the amount of $467 300, loss of income of $500,000 and loss of value of $800,000. At summary judgment, this Court dismissed the claim for Implied Breach as well as the damages for loss of income and loss of value. The sole remaining claim against Sentinel is for breach of contract for failing to indemnify Plaintiff for $467,300 in damaged tanning equipment and stolen lotions.

Sentinel asserts seven applicable affirmative defenses, summarized as follows:

1. <u>"Suit is barred."</u> The policy contains a condition, "Legal Action Against Us," requiring that for Plaintiff to file a lawsuit against Sentinel, Plaintiff must first comply with all terms of the insurance contract. The evidence will show that because Plaintiff failed to provide Sentinel with the documents and information it needed to investigate and adjust the claim, the lawsuit is barred.

2. <u>"Dishonesty Exclusion."</u> The policy contains an exclusion barring coverage for any loss or damage resulting from the dishonest acts of "anyone to whom you entrust the property for any purpose." The evidence will show that the loss was caused by Ryan Reeves, Plaintiff's corporate trainer and contractor, who had been

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 2

entrusted with one of five "grandmaster" keys that opened all doors at all thirty of the Tan Republic salon locations. Because the loss was caused by a person to whom the salons had been entrusted, there is no coverage for the loss.

3. "Failure to Cooperate." The Sentinel policy contains a statutorily-required condition precedent to coverage requiring Lioness Holdings to generally cooperate in the investigation of the loss and produce documents in support of the claim. The evidence will show that Plaintiff refused, and continues to refuse to this day, to produce the most basic documents in support of the $467,300 claim it has sued Sentinel for. Plaintiff's failure to cooperate has prejudiced Sentinel, and there is no coverage for Plaintiff's claim.

4. "Concealment and Misrepresentation." The policy contains a statutorily-required provision that voids the policy where the Insured intentionally conceals or misrepresents a material fact regarding the claim or the insured's interest in the property. The evidence will show that the Plaintiff's representatives made numerous material misrepresentations and concealments regarding the value of the property, the Plaintiff's interest in the property, the existence of claim documents, and regarding Plaintiff's production of claim documents. Sentinel detrimentally relied upon these misrepresentations and concealments. As a result, the policy is void and there is no coverage for the claim.

5. "No Insurable Interest." The policy, statute and public policy all require that a claimant have an insurable interest in the property before there can be any recovery. The evidence will show that Lioness Holdings LLC did not own the property that is the subject of the claim, rather the property was owned by another entity, Gibraltar Holdings LLC, which is not an insured entity. The policy provides only limited coverage for property of others, of $10,000 per occurrence. This amount was previously paid in full by Sentinel shortly after the loss occurred, and before Sentinel became aware of the other coverage issues.

6. Exclusion for "Inventory Shortages." The Sentinel policy contains an exclusion for a claimed loss where the only evidence of the loss is a shortage disclosed through an inventory computation. The evidence will show that the sole basis for Plaintiff's claim for stolen

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 3

lotion is just such an inventory calculation. As a result, there is no coverage for the lotion claim.

7. "<u>No Replacement Cost benefits.</u>" The policy requires that before Plaintiff is entitled to benefits for the cost of replacing damaged or stolen property, Plaintiff must first actually replace the property. There is no evidence that any of the property has been replaced, or that it has been replaced by Lioness Holdings. As a result, Plaintiff if not entitled to replacement cost damages.

8. There are several other affirmative defenses asserted by Sentinel, such as exclusions for consequential loss, lock and key replacement, and limitations for personal property where insurance is required by a lease. However, based upon discovery and present information, it is not believed that these defenses will come into play during trial. In an abundance of caution Sentinel refrains from dismissing them at this time.

**C.     Burden of Proof**

The Burden of Proof will play a heightened role in this trial due to some of the unusual aspects of this case. The initial burden of proof is upon the Plaintiff because it must show the loss is covered under the terms of the insurance policy. *Lewis v. Aetna Ins. Co.*, 264 Or. 314, 316, 505 P.2d 914 (1973). The insurance company then has the burden of showing an exclusion or limitation to coverage applies. *Stanford v. Am. Guaranty Life Ins. Co.*, 280 Or. 525, 527, 571 P.2d 909 (1977). If there is an exception or "give back" to the exclusion, then the burden switches back to the Plaintiff to show coverage exists. *Employers' Ins. Co. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 514, 156 P.3d 105 (2007).

**D.     Evidence at Trial**

The evidence will show the following facts:

Lioness was formed in Wyoming as a single member LLC in 2010, as one of numerous entities that were formed to create tax liability shelters for income

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 4

derived from the Tan Republic tanning salons in the Portland Metro area. Plaintiff's sole member was Matthew Green-Hite (who is also the accountant for Plaintiff). In 2012, Green-Hite filed documents showing that Ariel Petersen was appointed as Plaintiff's manager (but not a member). There are no other corporate formation documents, no sales or assignments. Matthew Green-Hite remains the sole member of Plaintiff and its owner, at least on paper. Peter Lamka purports to be its actual owner.

However, according to Plaintiff's Corporate Disclosure, Lioness Holdings LLC is comprised of two members: Red Mint, LLC and Gotcha Good Boy Toys, LLC. There is no supporting documentation for this disclosure and it remains unknown what Plaintiff bases this disclosure upon. Sentinel's corporate formation expert, Greg Englund, will testify that it is unclear what entity or person owns Lioness Holdings or the property at issue in this claim given the convoluted corporate tax shell game. The evidence will show that Lioness Holdings LLC serves as the operating entity of the Tan Republic salons and another entity, Gibraltar Holdings LLC, actually owns the assets. This was done to protect the Tan Republic salon assets from liability in the event a salon was sued.

Lioness Holdings started off in 2010 operating a handful of salons, which increased to approximately 30 salons by 2015. Although it employed anywhere from 50-80 persons, there were a relatively small number of persons who managed the business. Peter Lamka purports to be the owner and ultimately in charge, though it remains unclear what his exact title was. His wife/girlfriend (their actual relationship remains unclear) Ariel Petersen, was the "face" of the business—she managed and ran the day to day operations until she and Mr. Lamka broke up in 2015 and she left. Joseph Alan was the

DEFENDANT'S TRIAL MEMORANDUM
Page 5

1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

CFO and company bookkeeper. Zack Flenniken was the COO in charge of collections. Ryan Reeves was the corporate trainer and in 2015/2016, took on the additional role of construction contractor working on the build-outs of new Tan Republic tanning salons.

To conduct his work as corporate trainer and contractor for the new locations, Mr. Reeves was given full and unfettered access to all of the salons. He was one of only five people given a "grandmaster" key, which opened all doors of all 30 salon locations. He was also given the security alarm codes.

Mr. Lamka, Mr. Reeves and Ms. Petersen had a long and tumultuous relationship that over the years involved lurid affairs, long ranting emails, and claims of business backstabbing. These issues were overlooked because Ryan Reeves was a very good salesman, regularly selling the most membership packages for the salons. Despite this, in 2015 Mr. Lamka agreed to sell or "give" one of the Tan Republic salons—the Happy Valley location—to Ryan Reeves. In mid-September 2016, this agreement fell through and Mr. Lamka informed Reeves that he was not going to give him the Happy Valley location. Mr. Reeves became angry and threatened to take down the business.

On September 23, 2016, between the close of business that night and the open of business the next morning, Ryan Reeves used his grandmaster key to enter nine different Portland-area salons, where he stole tanning lotions, money from the till, and the computer boards from the inside of select pieces of equipment. Some of the equipment was also vandalized. Reeves carefully selected each piece of equipment so as to maximize the impact on the business. In each of the nine stores the hidden security camera and DVD recorders were disconnected and stolen. And, again using the grandmaster key that had been entrusted to him by Plaintiff, he locked each of the nine doors on his way back

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 6

out. A few nights later, on September 28, Reeves repeated this at a tenth location—the Happy Valley location. The thefts were so clearly an "inside job" by someone with an intimate knowledge of the business, its equipment, and the salon build-outs, that everyone in management immediately knew it had been Ryan Reeves.

Peter Lamka reported the claim to Sentinel. By using extra parts from a warehouse and "cannibalizing" extra tanning machines, the salons were able to immediately resume business. The claims were initially entered in Sentinel's computer system as ten separate claims for each location and, because of the relatively small amount for each claim, they were assigned to a lower-level adjusters. Upon further investigation, and the realization that all ten claims were in fact caused by the same person and appeared to be one occurrence, they were treated as a single claim and assigned to a Large Loss Adjuster, Greg Gatewood, located in Denver, Colorado. Mr. Gatewood's role was to adjust and verify the amount of claim and make any coverage determinations. He requested documents from Plaintiff relating to the property that was damaged and stolen, the values, and verifications in the form of invoices and receipts. He also requested financial profit and loss information in support of the business income loss that Plaintiff was also claiming.

Given the suspicious nature of what was clearly an "inside job," the claim was also referred to the Special Investigation Unit, who assigned local investigator Carrie Still. Ms. Still's role was to determine who caused the loss and if/how that person was affiliated with Lioness Holdings LLC. It was obvious the loss was an "inside job" by someone with a master key and while Mr. Lamka pointed to Ryan Reeves, she needed to determine whether anyone else was involved.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

In the meantime, Ms. Still took a recorded statement from Mr. Lamka and requested documents. By mid-October, red flags began to appear. For instance, documents were not forthcoming or only parts of documents were provided and Plaintiff was resistant to producing documents that would normally have been produced without question. The inventory of claimed property Plaintiff submitted was much larger than had been originally reported and the Plaintiff could not provide documents to support the values that were being claimed. An anonymous employee called and reported that the company was financially "underwater" and most of the damaged tanning beds were not working before the loss. Sentinel received information both Reeves and Lamka had caused the loss. The statements that Lamka and Joseph Allen were providing did not line up. Sentinel sent a letter notifying Plaintiff of its duty to cooperate with the investigation. By late November 2016, Sentinel decided it should retain counsel to request further documents and invoke its contractual right to take an Examination Under Oath of Mr. Lamka. Sentinel retained Josh Hayward and CJ Martin of the Smith Freed Eberhard law firm.

Plaintiff generated a spreadsheet shortly after the loss that tallied a total claim for loss of approximately $467,300, which is the amount now at issue in this litigation. This figure represents the total claim for damaged and stolen equipment ($423,711) and stolen lotions ($43,589). There was no supporting information submitted at that time, so Sentinel sought to obtain documentation in support of this claimed amount. Other than a few random invoices and repair estimates for equipment that total approximately $10,000, and despite repeated requests for the source documents supporting the information in the spreadsheet, no other documentation in support of the $431,640 equipment claim has been submitted.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 8

Regarding the $43,589 claim for stolen lotions, Plaintiff produced original invoices for the lotions that were stolen. However, it was determined that Plaintiff had misrepresented the amount of this claim to Sentinel. Instead of claiming Lioness' purchase value for the lotion, Plaintiff multiplied the purchase value x 4. These source documents—the only source documents Plaintiff submitted in support of the $467,300 claim—showed Plaintiff had misrepresented the value of the claim to Sentinel.

On December 2, 2016, the Smith Freed firm sent the first letter requesting specific documents for Lioness to submit in support of the claim. Some, but not all documents, were sent on December 14, 2016 and December 20, 2016. The Smith Freed firm sent follow up letters to Plaintiff in January and February 2017 requesting the missing documents, but they were not provided in full. In the meantime, Lioness hired attorney Levi Johnston. Still, the outstanding documents were not forthcoming. In March, through its counsel at Smith Freed, Sentinel invoked its contractual right to an examination under oath, which was scheduled for April 10. However, Mr. Lamka was unable to attend at that time and the EUO was ultimately rescheduled, at his request, to June 12, 2017. In the meantime, the Smith Freed firm continued to send letters requesting the outstanding documents from Plaintiff, to no avail.

On June 12, 2017, Mr. Lamka appeared for his sworn Examination Under Oath (EUO) and provided testimony regarding the claim and the existence of documents in support of the claim. On June 23, 2017, the Smith Freed firm send a letter requesting the claim documents that were identified and discussed in the EUO. Plaintiff sent a letter responding on July 14, 2017, offering to make some of the documents "available;" however Plaintiff at that

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

time also filed the instant lawsuit, including allegations of "bad faith," effectively suspending Sentinel's efforts to obtain documents until new litigation counsel was retained.

Following initiation of this lawsuit, the evidence will show that Sentinel requested the same categories of documents as had been requested by the Smith Freed firm following the EUO. Documents such as financial records which Plaintiff had previously agreed to "make available," Plaintiff now refused to produce and had to be compelled by the Court. Very few other documents have been forthcoming.

## OUTLINE OF LEGAL ANALYSIS AND ELEMENTS

### E.  Plaintiff's Case

Plaintiff will have the initial burden of proving it suffered "direct physical loss of or physical damage to Covered Property." See Policy, p.80. *Emplrs Ins. of Wausau v. Tektronix, Inc.,* 211 Or. App. 485, 514, 156 P.3d 105, 122 (2007); *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 67 Or. App. 623, 627, 679 P.2d 879 (1984); *Lewis v. Aetna Ins. Co.*, 264 Or. 314, 316, 505 P.2d 914 (1973). This includes the burden of proving that it had an insurable interest in the property claimed. See, e.g., *Ferring v. Ace Private Risk Servs.*, No. CV-15-01168-PHX-SMM, 2017 U.S. Dist. LEXIS 217279, at *10 (D. Ariz. Jan. 31, 2017) ("it is [the insured's] burden to prove an insurable interest"). Ordinarily, this burden would be established without much dispute, but here Plaintiff will not be able to meet this initial burden because the evidence will show Gibraltar Holdings, LLC, a separate entity that is not an insured under the policy, owned the property and equipment at issue in this claim.

In addition, Plaintiff will have the initial burden of proving the amount of its claim and damages through the introduction of *admissible evidence*. Again,

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 10

while ordinarily not an issue, Plaintiff's refusal and inability to produce source documents and records in the claim process and discovery indicate this will be a substantial hurdle in Plaintiff's case in chief.

**F.    Sentinel's Case**

As an initial matter, to the extent Plaintiff is able to meet its burden of proving that it had an insurable interest in the damaged property at issue in this claim, and that the value of the damage exceeds $10,000, the Policy's coverage is limited as a matter of law to $10,000, for all 10 salons because the thefts/vandalism to all 10 salons arose out of the same single "occurrence." This single per-occurrence limit of $10,000 applies because Ryan Reeves committed all ten thefts using the same *modus operendi*: he used his master key to enter each of the salons undetected, steal lotions, stole parts and vandalize certain equipment to inflict business harm upon Plaintiff. Each of the 10 losses were committed by Reeves in the identical manner, with the same intent, plan and execution. Ryan Reeves's intent and plan were the single damage – causing event to all ten salons, and thus one occurrence. .

**1.    First Affirmative Defense (Suit is Barred)**

The policy requires compliance with all terms of the policy prior to the insured initiating any lawsuit:

> **4.    Legal Action Against Us**
>
> No one may bring a legal action against us
> under this insurance unless:
>
> **a.** There has been full compliance with all of the
>     terms of this insurance; and
>
> * * *

Here, Plaintiff filed suit prior to producing documents requested by



1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 11

Sentinel. The facts supporting the first affirmative defense relate to the documents that Plaintiff failed to produce in support of its claim prior to filing this suit, as asserted in Sentinel's Third Affirmative Defense for Failure to Cooperate, below.

### 2. Sentinel's Second Affirmative Defense (Employee Theft Exclusion/Limitation)

As found by this Court, the loss was caused by Ryan Reeves, who was an independent contractor, who was given access to the salon at all times.

The Special Form coverage Language excludes all dishonest/criminal acts by an employee or someone to whom you entrust any property.

> **B. EXCLUSIONS**
> * * *
> **2.** We will not pay for physical loss or physical damage caused by or resulting from:
>
> > **e. Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representative or anyone to whom you entrust the property for any purpose:
> >
> > > **(1)** Acting alone or in collusion with others; or
> > >
> > > **(2)** Whether or not occurring during the hours of employment.
> >
> > This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.
>
> * * *

The evidence will show Ryan Reeves was someone to whom Plaintiff entrusted property by virtue of his entrustment of the grand master key and his general unfettered access to all 30 salons.

MALONEY | LAUERSDORF | REINER PC
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 12

### 3. Sentinel's Third Affirmative Defense (Failure of Conditions Precedent/Cooperation)

Much of Sentinel's claim efforts, and litigation efforts, have been to attempt to obtain (unsuccessfully) information that is rather basic to any claim – Who caused the loss? How much was the damage? Who owned the property? Can we verify the amounts claimed? To date, these basic, material questions remain unanswered because Plaintiff verbally provides conflicting information and refuses to provide the documents for Sentinel to verify this information. To date, Sentinel's efforts have been repeatedly stymied by Plaintiff, materially prejudicing Sentinel's ability to adjust or determine coverage of the claim. The evidence will show there is no coverage because Plaintiff's misrepresentations and failure to cooperate have breached the policy, which states:

> **3. Duties In The Event of Loss Or Damage**
>
> You must see that the following are done in the event of loss of or damage to Covered Property:
>
> * * *
>
> **d.** Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also, keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limits of Insurance.
>
> * * *

This provision requires Plaintiff to protect the property from further loss and keep records of expenses for emergency and temporary repairs. Mr. Lamka testified in deposition that they tracked the transfer and costs associated with "triaging" and "cobbling together" the damaged equipment. However, this


1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 13

information was not provided despite repeated requests during the claim and during litigation. After the first nine thefts, Lioness Holdings also failed to take any steps to protect the salons from further thefts by Mr. Reeves.

Additionally, the policy Duties require Plaintiff to cooperate with Sentinel in the investigation of the claim and to provide documents.

> **3. Duties In The Event Of Loss Or Damage**
>
> You must see that the following are done in the event of loss or damage to Covered Property:
> \* \* \*
> g.  If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.
> \* \* \*
> i.  Cooperate with us in the investigation or settlement of the claim.

Policy, p. 99.

The Sentinel policy also contains the following Common Policy Condition:

> **D. Examination Of Your Books And Records**
> We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years
> afterward.

Policy, p. 70.[1]

---

[1] See also ORS 742.230, which states:

> The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; **and**, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such

MALONEY | LAUERSDORF | REINER pc
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 14

The facts will show that Plaintiff failed to produce documents that Sentinel requested in support of the claim. The documents include:

- Any documents evidencing the past maintenance and repair of claimed equipment prior to the loss
- Documents evidencing the repair of the claimed equipment after the loss—i.e., the equipment repairs and "triaging"
- Any documentation supporting the claimed post-loss replacement of the lotions or equipment
- QuickBooks and financial records in support of Plaintiff's claimed loss of revenues
- Business formation documents
- Documents relating to Reeves' relationship to Lioness
- Original purchase documents for the equipment
- Other documents showing Lioness' financial condition at the time of loss, such as threats of litigation, liens, and debts owed.

The evidence will show that throughout the claim process, and litigation, Sentinel repeatedly sent letters to Plaintiff seeking the documents and records it needed to assess its liability and coverage for the claim. Plaintiff refused to provide this information, misrepresented that it had provided everything, and instead sued Sentinel. Plaintiff's refusal to produce these records prejudiced Sentinel's ability to determine coverage, its obligations under the policy, and the amount, if any, due and owing to Plaintiff. As a result, Plaintiff breached the contract and there is no coverage.

///

///

---

reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made. (Emphasis in original.)

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 15

### 4. Sentinel's Fourth Affirmative Defense (Concealment, Misrepresentation or Fraud)

Sentinel's policy language voids the policy in the event Plaintiff makes an intentional concealment or misrepresentation of a material fact concerning the claimed property and its interest in the property:

> **C. Concealment, Misrepresentation Or Fraud**
> This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This policy;
>
> 2. The Covered Property;
>
> 3. Your interest in the Covered Property; or
>
> 4. A claim under this policy.
>
> * * *

The evidence will show Plaintiff's conduct was clearly "intentional." This is clearly inferred from the circumstances surrounding each misrepresentation/concealment, and from the Plaintiff's general refusal to cooperate and produce documents.

The evidence will show Sentinel relied upon Plaintiff's misrepresentations that this was a covered loss when it issued the $10,000 advance shortly after the claim was reported. In addition, Sentinel relied upon Plaintiff's misrepresentations that this was a covered loss when it retained EUO and coverage counsel to obtain documents from Plaintiff, thus incurring additional expense that it would not otherwise have incurred.

The "material" facts that Plaintiff misrepresented include:

- Lioness Holdings was the owner of the property and equipment at issue in the claim. The evidence will show the real owner was Gibraltar Holdings, which is not an insured entity.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 16

- Plaintiff's concealment of information relating to Lioness Holdings' financial circumstances and condition at the time of loss, specifically the threat and imposition of fines by the State of Oregon for failure to register tanning equipment, and civil rights violations. This concealment was material to Plaintiff's claim for loss of income, potential motive for Plaintiff intentionally causing the loss, and the driving factor behind Plaintiff's real reason for inflating the amount of its claim.

- Plaintiff's misrepresentation of the value of lotions in each of the stores. The claim Plaintiff submitted as its cost for lotions was 4-5 times what Plaintiff actually paid, as evidenced by the actual pre-loss receipts and invoices for the lotions.

- Plaintiff's misrepresentation of the value of lost business income. This misrepresentation is further evidenced by Plaintiff's refusal to produce, in a timely manner or in total, its accounting and QuickBooks records, which show that Plaintiff did not have any loss of income. Facts supporting this material misrepresentation are also supported by Sentinel's financial expert.

### 5. Sentinel's 10th and 11th Affirmative Defenses (No Insurable Interest and Personal Property of Others)

The Policy generally only covers property owned by the named insured, Lioness Holdings, LLC, or is property of others in the care, custody or control of Lioness Holdings (See, POLICY000080). To the extent claim is made for personal property belonging to someone other than a named insured, but which is in the care, custody and control of the named insured, such coverage is limited to $10,000. (See, POLICY000065 and 118).

The evidence will show there are no documents indicating that Lioness Holdings owns any of the equipment or property at issue in the claim. In addition:

- Corporate formation documents show Matthew Green-Hite as the forming LLC member

- Peter Lamka has represented in emails and in his EUO that Green-Hite had no ownership interest in Lioness Holdings

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 17

- Peter Lamka has represented that he is the owner of Plaintiff, yet no documents exist that support this contention. Documents show that other persons are members and/or owners of Plaintiff.

- Lamka testified in a regulatory hearing, regarding the imposition of fines for failure to pay registration fees for tanning equipment, that he was the manager, not the owner of Lioness Holdings, and that he did not know who the owner was.

- Tax depreciation records show Gibraltar Holdings LLC, not Lioness Holdings, was the owner of all property and equipment at issue in the loss.

- No salon leases are signed by Lioness Holdings.

### 6. Sentinel's Twelfth Affirmative Defense (Leased Business Personal Property Limitation)

The policy states that to the extent Lioness Holdings was in the care, custody or control of property it had leased from another, and to which it had a contractual duty to insure, such coverage was limited to $20,000. (POLICY000080 and 65). It is believed that this affirmative defense will be moot at trial because no applicable leases are known to exist or have been produced in litigation.

### 7. Other Limiting Affirmative Defenses

Although not complete bars to coverage for Plaintiff's claims, Sentinel also asserts two affirmative defense that, in the event the jury finds coverage, limit the amount of individual parts of Plaintiff's claims.

Sentinel asserts an exclusion for "Inventory Shortages," which bars coverage where the only evidence of the loss is a shortage disclosed through an inventory computation. The evidence will show this exclusion applies to Plaintiff's $43,000 claim for lotions because the sole basis for Plaintiff's lotion claim is an inventory calculation. Plaintiff simply compared the prior day's

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 18

inventory to what was inventoried the next day. Given the lack of any other direct evidence that the lotions in Plaintiff's claim were actually missing or stolen, there is no coverage.

Sentinel also asserts the standard policy condition relating to "Replacement Cost." The policy requires that before Plaintiff is entitled to benefits for the cost of replacing damaged or stolen property, Plaintiff must first actually replace the property. The evidence will show there is no evidence that any of the property has been replaced, or that it has been replaced by Lioness Holdings. As a result, Plaintiff if not entitled to replacement cost damages, and is only entitled to the actual cash value of the damaged property. There is no admissible evidence that Plaintiff has presented in discovery indicating anything other than the claimed replacement cost valuation. Absent such evidence, Plaintiff can recover nothing.

## **CONCLUSION**

From the beginning, Plaintiff's claim has been characterized by Plaintiff's conflicting information, misrepresentations, concealments, attempts to divert Sentinel's investigation, and failure to produce the most basic documentation in support of the claim. These actions, endemic of the entire claim, constitute breaches of the insurance policy. In addition, these actions served to attempt, unsuccessfully, to mask Plaintiff's non-ownership of the property at issue and the involvement of its management in causing the loss. Any way this suit is viewed, the evidence will show there is no coverage because the loss was caused by Ryan Reeves, who is a person to whom Plaintiff entrusted the salons and property. Additionally, there is no coverage because Plaintiff's misdirection, misrepresentations and refusal to provide supporting documentation were material to Sentinel's investigation, prejudiced its

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 19

attempts to investigate the loss, and voided any coverage that might otherwise have applied.

DATED: June 27, 2018

MALONEY LAUERSDORF REINER, PC


By /s/ Francis J. Maloney
   Francis J. Maloney, OSB #953441
   Scott A. MacLaren, OSB #123799
   Telephone: 503.245.1518
   Attorney for Defendant Sentinel Insurance Company, Ltd.

1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

DEFENDANT'S TRIAL MEMORANDUM
Page 20